# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LEE BENNETT,

                Plaintiff,

v.

LT. SOBEK, OFFICER O'DONNELL,
OFFICER MIKULECKY, OFFICER
STEVENS, OFFICER FISCHER, and
OFFICER LEGERE,

                Defendants.

Case No. 16-CV-1403-JPS

**ORDER**

Plaintiff, a former state prisoner, filed a complaint alleging that Defendants, correctional officers at the Milwaukee County Jail (the "Jail"), sprayed him with pepper spray, and then began punching and kicking him repeatedly, all without good reason or any resistance from him. (Docket #8 at 3–4). Plaintiff was allowed to proceed against Defendants on a claim of excessive force in violation of his rights under the Eighth Amendment. *Id.* at 4–6. Defendants filed a motion for summary judgment, *see* (Docket #37), and that motion is fully briefed and ripe for adjudication. For the reasons explained below, it must be granted.

## 1.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016).  A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2.    RELEVANT FACTS

The following facts are material to the disposition of Defendants' motion. They are drawn from the parties' factual briefing, (Docket #38, #52, #53, #55, and #56), unless otherwise noted.

During the events of this case, Plaintiff had multiple felony convictions and was primarily confined at a Wisconsin maximum-security prison. In July 2015, Plaintiff was temporarily transferred to the Jail so that he could attend court proceedings. At that time, Defendants were employed as Jail correctional officers. Plaintiff was housed in the Jail's segregation unit, as is typical of convicted prisoner transferees. Plaintiff himself was considered a high-risk inmate.

On July 28, 2015, the Jail's emergency response unit, called the CERT team, was called to the segregation unit to deal with an unruly inmate. At that same time, Defendant Lt. Scott Sobek ("Sobek") saw Plaintiff "fishing" from his cell. "Fishing" involves attaching something heavy, like a bar of soap or some other contraband, to a string, either an actual thread or something fashioned from other cloth material in the cell, and casting it under the cell door. The line is cast out in an effort to reach another inmate's

cell. Fishing is typically employed to transfer items between cells while the inmates are locked inside.

Fishing is, of course, against Jail rules. Inmates are also not permitted to possess string or to create a string substitute from their clothes, mattress, blanket, or other cloth materials. Sobek went to Plaintiff's cell and repeatedly ordered him to give up the fishing materials. Plaintiff refused each time. Sobek indicated that he could call over the CERT team to get the string involuntarily, but Plaintiff would not relent. Sobek then turned the matter over to the CERT team. The other named Defendants were members of the CERT team, which was led by Officer Jacob Gennrich ("Gennrich").

Gennrich asked Plaintiff to put his hands through the trap door of the cell so that he could be handcuffed. Plaintiff responded: "[f]uck naw, you'all are going to have to come in here and get it and I'm going to beat you'all asses." (Docket #41-1 at 2). Gennrich then told Defendant Officer Daniel Fischer ("Fischer") to use pepper spray to attempt to gain Plaintiff's compliance.[1]

---

[1]According to Plaintiff's verified amended complaint, Plaintiff saw Fischer shaking a can of pepper spray and smiling before Gennrich directed him to use it, implying that Fischer relished the opportunity to use the spray on Plaintiff. (Docket #28 at 1). Defendants argue this cannot be true because Plaintiff testified during his deposition that he could not see the faces of the CERT term officers through their face masks. (Docket #55 at 3). Defendants invite the Court to invoke the "sham affidavit" rule to discredit Plaintiff's allegation about Fischer's menacing smile, as well as several other of Plaintiff's arguments in response to summary judgment.

The sham affidavit rule prohibits litigants from manufacturing issues of fact with affidavits that contradict their prior sworn testimony. *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009). Otherwise, the ability of a court on summary judgment to "weed out unfounded claims, specious denials, and sham defenses" would be undercut. *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–69 (7th Cir. 1996). Consequently, "[w]here a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it

The parties' accounts of what happened next diverge sharply. Plaintiff asserts that once the order to spray was given, he put his hands out to be handcuffed. Defendant Officer Michael Stevens ("Stevens") then grabbed his hands and Fischer sprayed Plaintiff four times, three times in the body and once in the face. One of the officers stated that Plaintiff "should have given [them] the fucking fishing line." (Docket #55 at 3). Immediately afterward, Plaintiff began choking and yelling for medical attention. Defendants ignored his pleas. Instead, they opened his cell door, rushed in, and Gennrich and Fischer beat him with their fists and feet. They asked Plaintiff for the fishing line, but he said he did not know where it was. Defendants then left the cell, leaving Plaintiff in pain and distress from being sprayed.[2]

_____

is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995).

The key to the sham affidavit rule is not the form of the sworn statement— *i.e.*, verified amended complaint versus deposition testimony—but the timing of the statements. *Bank of Illinois* and the cases cited therein uniformly involve a witness trying to contradict an earlier sworn statement with a later one. *See Bank of Ill.*, 75 F.3d at 1169. The witness's earlier statement must stand unless he can adequately explain why his more recent statement is necessary. *Id.* In such cases, it is the later statement that must be disregarded, if any.

Thus, the Court cannot follow Defendants' suggestion to reject Plaintiff's statement in his amended complaint about Fischer's smile. It could only reject the later deposition testimony. Of course, Defendants do not press the Court to do so. For the reasons explained below, this issue is not essential to the resolution of Defendants' motion. The overwhelming and undisputed evidence shows that application of pepper spray was a reasonable response to Plaintiff's insubordination, and further, the decision to deploy the spray was made by Gennrich, not Fischer.

[2]Plaintiff does not dispute, in his response to Defendants' proposed facts, that Defendants Sobek, O'Donnell, Legere, Stevens, and Mikulecky did not use

Defendants deny all of this.[3] They maintain that Fischer sprayed twice into Plaintiff's cell in short bursts. He did not direct the spray at Plaintiff's face or body. After the spray was used, Plaintiff became compliant and he turned over the fishing materials.

In either event, Defendants eventually handcuffed Plaintiff and took him to the nurse. The nurse provided medical attention to Plaintiff in relation to the pepper spray, including flushing his eyes. Plaintiff was medically cleared and taken to a new cell. Defendants note that Plaintiff never complained to the nurse about having been beaten or sought treatment for any related injuries. In an attempt to dispute this assertion, Plaintiff points to an allegation of his amended complaint. In his pleading, Plaintiff says that after he was handcuffed, he told Sobek that "I need to see the nurse because I'm in serious pain and having a hard time breathing." (Docket #28 ¶ 11).

When viewed in context and with other evidence, it is clear that the "pain" referenced in the amended complaint came only from the pepper spray, not a physical beating. In other paragraphs of his amended complaint, Plaintiff's allegations center on the pain and discomfort from being sprayed. *Id.* ¶ 10 (Plaintiff sought a towel and water to wash his burning face), ¶ 13 (the nurse flushed Plaintiff's eyes and let him catch his breath, then cleared him), ¶ 14 (Plaintiff complains that Sobek denied his

---

force against him. *See* (Docket #38 at 10–11 and #53). That leaves only Fischer as an alleged abuser, as Gennrich is not a named Defendant.

[3]Defendants each specifically aver that they did not hit Plaintiff or see anyone hit him. They also point to the reports generated after the incident as evidence that the alleged violence did not occur. Plaintiff suggests that they are lying, both in their affidavit testimony and in the reports. *See* (Docket #38 at 9–11; Docket #55 at 7–9).

request for a shower to wash off the pepper spray), ¶ 16 (Plaintiff complains that he had to go to court the next day with pepper spray still on his body, causing pain). In his own deposition, Plaintiff could only recall telling the nurse about his eye pain because "that was [his] main focus." (Docket #47-1 38:14–39:5). Plaintiff further admitted that he did not seek or receive medical care during this stay at the Jail other than seeing the nurse this one time. *Id.* The nurse's note about the incident shows that Plaintiff complained only of burning and chest pain from being sprayed, and that she treated him for those conditions and nothing else. *Id.* at 17. Another nurse's note, generated the next morning, states that Plaintiff was still upset about being sprayed, and mentioned nothing about being beaten. *Id.* Finally, the Jail log entry for the incident states that Plaintiff "complain[ed] that his chest [was] hurting from the OC spray." (Docket #57-1).[4]

### 3.     ANALYSIS

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on convicted prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a prison official is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d

---

[4]One final issue regarding the facts needs attention. After summary judgment briefing was complete, Plaintiff filed a motion to strike portions of Attorney Kathryn West's ("West") declaration, (Docket #57), which was filed in support of Defendants' summary judgment motion. (Docket #59). West's declaration notes that an exhibit filed by Plaintiff appears to have a line or mark on it that does not appear on Defendants' copy of the same document. Plaintiff balks at the implication that he altered the document. Whether or not the errant mark appeared on the original document is not material, and therefore the motion to strike will be denied.

749, 757 (7th Cir. 2010). Several factors can inform this determination, including the need for force, the amount applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

The Supreme Court has instructed that the question is not whether the force employed, viewed with the benefit of hindsight, was appropriate, but whether it was motivated by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). As a result, on summary judgment "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id.* at 322.

Here, it is uncontested that Plaintiff violated prison rules by attempting to fish between cells. Because his conduct threatened institutional security and the maintenance of good order, it necessitated a response from correctional officers, who are charged with the unenviable task of maintaining order and discipline in the prison environment.

Sobek's first response was to try verbal negotiation. Plaintiff refused to stop. Next, he was warned that the CERT team would compel his compliance if he did not relent. He welcomed it and threatened to attack any guard who entered his cell. The CERT team arrived and Gennrich opened with a verbal request for compliance. Again, it was refused. According to Plaintiff, Gennrich then grabbed his hands through the cell trap door and Fischer then sprayed him repeatedly with pepper spray.

As the undisputed facts make clear, Defendants resorted to the use of pepper spray when lesser measures proved ineffective. As such, this case is analogous to *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). There, the officer first ordered the inmate to "get against the wall," which the inmate refused to do. *Id.* at 1045. The officer bent the inmate's wrist, but still the inmate did not comply. *Id.* Finally, he "slammed" the inmate against the wall. *Id.* The Seventh Circuit did not find this use of force excessive, observing that the officer "did not use any force until [the inmate] disobeyed a command that was designed to maintain order within the prison; and, when [he] applied modest force, [the inmate] remained defiant. [The officer] did not violate the Constitution by applying additional force." *Id.* at 1046.

Of course, this case is different from *Guitron* in that Defendants did not graduate from lesser to greater forms of physical force. But what matters is that here, as in *Guitron*, lesser forms of coercion were ignored. After making verbal admonitions, Sobek threatened the involvement of the CERT team. When Plaintiff not only ignored the warning but threatened to hurt the officers, they chose to apply pepper spray. Pepper spray admittedly causes pain and discomfort, but its use was justified under these circumstances. Joining Plaintiff in the cell for a physical confrontation would have been exceedingly dangerous given his belligerent statements.

The Eighth Amendment is not concerned with what the best approach would have been in a given situation. Indeed, it is not even concerned with whether Defendants' use of force was objectively reasonable, except to the extent that the reasonableness of their actions reflects their subjective intent. *Whitley*, 475 U.S. at 322. In this case, those objective considerations demonstrate that Defendants' conduct, under the

strain of the situation, was within the permissible bounds of their considerable discretion. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (noting that "[p]rison administrators. . .should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). As the Supreme Court explained in *Whitley*, when facing prison disturbances, officers are often forced into "decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320. Courts are ill-suited to sit in judgment of those decisions. In Plaintiff's case, no reasonable jury could infer from the undisputed facts that Defendants' use of pepper spray was animated by a malicious desire to cause him harm. *Id.* at 322.

Of course, the thrust of the parties' dispute on summary judgment is the occurrence or non-occurrence of the ensuing physical beating. If, as Plaintiff contends, the officers subdued him with pepper spray and then gratuitously beat and kicked him, an Eighth Amendment claim would lie. But the record in this case establishes that no reasonable jury would believe that happened.

Plaintiff alone makes this allegation; all Defendants deny it categorically. Further, as far as the record reveals, the first time Plaintiff made this assertion was upon filing his complaint in this action. It is telling that Plaintiff did not complain of a beating to the nurse who saw him immediately after the incident, nor the one who saw him the next day. Indeed, he never complained of any physical beating while at the Jail. And the nurse's exam right after the altercation did not reveal any injuries from a beating, only those from the pepper spray. Because absolutely none of the

contemporaneous evidence even tangentially supports Plaintiff's allegation that he was beaten, no reasonable jury would believe it.

A party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). A triable dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Consequently, if no reasonable jury could find for the non-movant, summary judgment must be granted. *Id.* Trials are not granted where the non-movant creates only "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005).

Under these standards, Plaintiff has not raised a genuine dispute as to the occurrence of the beating. His only evidence is his averment in this lawsuit. True, it is not the Court's province to make credibility determinations at the summary judgment stage, *Berry*, 618 F.3d at 691, but that is not the nature of the Court's conclusion. Instead, the Court concludes that because all of the other evidence in the case indicates that the beating did not occur, including several contemporaneous medical records and Plaintiff's own failure to complain at the time, no reasonable jury could believe his present theory. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Holt v. Ford Motor Credit Co.*, 275 F. App'x 553, 554 (7th Cir. 2008) (no genuine dispute of fact where plaintiff produced an affidavit swearing that he did not sign a contract and all other evidence in the record suggested he did). As a result, Plaintiff's excessive force claim must fail.[5]

## 4.     CONCLUSION

Conducting a jury trial comes at a substantial cost to the court and requires the expenditure of immense resources by all involved, including the members of the public called to participate in the jury panel. Trial is reserved for those increasingly rare instances where litigants cannot resolve their dispute without a neutral fact-finder to decide genuine, material issues of fact. A manufactured factual dispute based on one piece of incredible evidence is simply insufficient to warrant the extraordinary process of trial by jury.

In this case, no reasonable jury could find in Plaintiff's favor on his claim of excessive force. The Court must, therefore, grant summary judgment in Defendants' favor and dismiss this action with prejudice.

---

[5] In his summary judgment submissions, Plaintiff for the first time attempted to state a new claim against Sobek and several members of the CERT team, arguing that they failed to protect him from the spraying and alleged beating. *See* (Docket #55 at 9). Plaintiff made no such claim in his original or amended complaints, and he was not permitted to proceed on such a claim by the Court during its screening process. 28 U.S.C. § 1915A(b). Plaintiff cannot invent new legal theories at summary judgment to avoid the headman's axe. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). Moreover, since Plaintiff was never subjected to excessive force, no officer can be liable for failing to protect him from such force. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #37) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike (Docket #59) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge